T.C. Memo. 2012-78

UNITED STATES TAX COURT

BASIM SHAMI AND RANIA ARDAH, ET AL.[1], Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos.  28666-08, 28667-08,          Filed March 21, 2012.
             28673-08, 28687-08,
             28688-08, 28692-08,
              5671-09, 13408-09.

<u>Jeremy M. Fingeret</u>, <u>Michael A. Thompson</u>, and <u>Robert G. Wonish II</u>, for

petitioners.

<u>Sara W. Dalton</u>, <u>Joshua Smeltzer</u>, and <u>Derek Matta</u>, for respondent.

--------

[1]This case is consolidated for purposes of trial, briefing and opinion with the cases of Arthur J. Goertz and Jo McCall Goertz, Docket No. 28667-08; Farouk Shami and Izziah Shami, Docket No. 28673-08; Shaukat Gulamani, Docket No. 28687-08; Rami Shami and Najat Badran, Docket Nos. 28688-08 and 5671-09; and John McCall and Kathy McCall, Docket Nos. 28692-08 and 13408-09.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined deficiencies in these consolidated cases as follows:

| Dkt. No. | Petitioners | 2003 | 2004 | 2005 |
|---|---|---|---|---|
| 28666-08 | Basim Shami and Rania Ardah | $1,233.00 | $2,939.00 | -0- |
| 28667-08 | Arthur J. and Jo McCall Goertz | 110,005.00 | 290,754.00 | $58,672.00 |
| 28673-08 | Farouk and Izziah Shami | 557,583.00 | 382,225.00 | 133,270.00 |
| 28687-08 | Shaukat Gulamani | 10,722.00 | 7,495.00 | -0- |
| 28688-08 | Rami Shami and Najat Badran | -0- | 7,494.00 | -0- |
| 28692-08 | John and Kathy McCall | 235,877.15 | 164,881.00 | -0- |
| 5671-09 | Rami Shami and Najat Badran | -0- | -0- | 2,613.00 |
| 13408-09 | John and Kathy McCall | -0- | -0- | 57,831.00 |
| Total | | 915,420.15 | 855,788.00 | 252,386.00 |

After concessions,[1] the sole issue for decision is whether certain wages

Farouk Systems, Inc. (FS) paid to petitioner Farouk Shami (Mr. Shami) for 2003,

---

[1]The parties disagree as to whether the remaining FS employees, whose wages FS used to claim the research credit for the relevant years, engaged in qualified research within the meaning of sec. 41(b)(2)(B).  The parties agreed, however, at the Court's direction to focus on the two highest FS wage earners.

2004 and 2005 and petitioner John McCall (Mr. McCall) for 2003 and 2004 qualify as research expenses for purposes of FS claiming the credit for increasing research activities under section 41 (research credit).[2] We hold that none of the wages qualify.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts and the accompanying exhibits are incorporated. Each petitioner resided in Texas when the petitions were filed. Petitioners were shareholders of FS, an S corporation for Federal tax purposes.

FS developed, manufactured and sold internationally hair, skin and nail products. FS had hundreds of employees and was organized into various departments including manufacturing, marketing, sales, education and research and development. Product development activities were spread across departments, but activities involving scientific knowledge and experimentation were conducted by the research and development department or were outsourced. The research and development department staff ranged from 18 to 27 employees during the relevant years. The staff included chemists, technicians and a vice president of

[2]All section references are to the Internal Revenue Code in effect for the relevant years, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

research and development, who supervised the department. FS is most known for developing the BioSilk, CHI hair coloring systems and flat irons, Color Vision, SunGlitz and Deep Brilliance product lines.

Mr. Shami founded FS in 1986 after coming to the United States in the 1960's from Palestine on an academic scholarship, eschewing his father's desires that he follow him into teaching, and began working part time as a hair stylist. Mr. Shami was FS's chief executive officer, president and secretary for 2003 and 2004. He also served as the chairman of FS's board of directors and as the sole member of FS's manufacturing and operations committee. Mr. Shami was paid wages of $8,735,727, $7,988,310 and $9,529,639 for 2003, 2004 and 2005, respectively.

Mr. McCall was a principal for many years of Armstrong McCall, a wholesale distributor that marketed and sold FS products. Mr. McCall became a shareholder, officer and director of FS in the 1990s. Mr. McCall was FS's executive vice president and the sole member of its sales and marketing committee for 2003 and 2004. Mr. McCall was paid wages of $5,722,699 and $1,839,581 for 2003 and 2004, respectively.

Neither Mr. Shami nor Mr. McCall have formal education or training in any physical or biological science or engineering.

FS contracted with alliantgroup, LP (alliantgroup) to conduct research and development tax credit studies covering the relevant years.[3] The studies concluded that FS was eligible to claim the research credit based, in part, upon wages paid to Mr. Shami and Mr. McCall. The results of the studies formed the basis for FS claiming the research credit for the relevant years.

FS filed Form 1120S, U.S. Income Tax Return for an S Corporation, claiming the research credit for each year at issue. Petitioners filed tax returns claiming their respective portions of the research credits. Respondent issued petitioners deficiency notices disallowing the claimed research credits. Petitioners filed timely petitions for redetermination with this Court.

## OPINION

We are asked to decide whether certain wages FS paid to Mr. Shami and Mr. McCall qualify for the research credit. We begin with the burden of proof. The Commissioner's determinations in a deficiency notice are presumed correct, and taxpayers bear the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Tax credits are a matter of legislative grace,

---

[3]The attorneys representing petitioners are alliantgroup employees. The Court is satisfied that the attorneys' representation of petitioners did not create a conflict of interest under Rule 24(g) as they obtained the necessary informed consent.

and taxpayers bear the burden of proving they are entitled to claim tax credits.  See, e.g., INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  The burden to disprove a claimed credit may shift to the Commissioner if the taxpayers prove that they have satisfied certain conditions.  Sec. 7491(a); Gaitan v. Commissioner, T.C. Memo. 2012-3.  Petitioners have not shown that they complied with the requirements of section 7491(a).  The burden of proof, therefore, remains with petitioners.  See Rule 142(a).

We now address whether certain wages FS paid to Mr. Shami and Mr. McCall qualify for the research credit.  A taxpayer is allowed a credit against income taxes equal to 20% of the excess (if any) of the qualified research expenses (QREs) for the taxable year over the base amount.[4]  Sec. 41(a)(1).  QREs include, among other things, wages paid or incurred to an employee for performing qualified services.  Sec. 41(b)(1) and (2).  Qualified services means engaging in qualified research or engaging in the direct supervision of research activities that

---

[4]In 1986 Congress created stricter eligibility requirements for claiming the research credit out of concern that taxpayers were interpreting the research credit too broadly and that "some taxpayers * * * claimed the credit for virtually any expenses relating to product development."  S. Rept. No. 99-313, at 694-695 (1986), 1986-3 C.B. (Vol. 3) 1, 694-695; see also Union Carbide Corp. & Subs. v. Commissioner, T.C. Memo. 2009-50; H. Rept. No. 99-426, at 178 (1985), 1986-3 C.B. (Vol. 2) 1, 178.

constitute qualified research. Sec. 41(b)(2)(B). The term "engaging in qualified research" as used in section 41(b)(2)(B) means the actual conduct of qualified research (as in a scientist conducting laboratory experiments). Sec. 1.41-2(c)(1), Income Tax Regs. Direct supervision of qualified research means immediate supervision (first-line management) of qualified research (as in a research scientist who directly supervises laboratory research). Sec. 1.41-2(c)(2), Income Tax Regs. Direct supervision does not include supervision by a higher level manager to whom first-line managers report, even if the manager is a qualified research scientist. Id.

If an employee has performed both qualified services and nonqualified services, only the amount of wages allocated to the performance of qualified services constitutes QREs. Sec. 1.41-2(d)(1), Income Tax Regs. All wages paid to an employee, however, are allocable to qualified services and constitute QREs if at least 80% of the employee's wages are attributable to qualified services for a taxable year. Sec. 1.41-2(d)(2), Income Tax Regs.

The amount of wages properly allocable to qualified services is determined by multiplying the total amount of wages paid to or incurred for the employee during the taxable year by the ratio of the total time actually spent by the employee in the performance of qualified services for the employer to the total time spent by

the employee in the performance of all services for the employer during the taxable year.  Sec. 1.41-2(d)(1), Income Tax Regs.  Another allocation method may be used if the taxpayer demonstrates the alternative method is more appropriate.  Id.

A taxpayer claiming a credit under section 41 must retain records in sufficiently usable form and detail to substantiate that the expenditures claimed are eligible for the credit.  Sec. 1.41-4(d), Income Tax Regs.  Petitioners did not demonstrate a more appropriate method than the one the regulations prescribe for apportioning the wages between qualified services and nonqualified services.  Accordingly, while petitioners are not required to show that Mr. Shami and Mr. McCall wore lab coats, petitioners must substantiate the time Mr. Shami and Mr. McCall spent performing qualified services and the total time they spent performing all other services.  We now turn to this issue.

Petitioners claim that Mr. Shami and Mr. McCall spent 80% of their time performing certain services related to FS product research and development (research and development services) that constitute qualified services for 2003 and 2004 and that Mr. Shami spent 35% of his time performing such services for 2005.  Respondent argues that petitioners failed to adequately substantiate the wage allocations for Mr. Shami and Mr. McCall.  We agree.

FS's product research and development was conducted across numerous departments and by many employees. Petitioners failed to provide any documentation that establishes how much time, if any, Mr. Shami or Mr. McCall spent performing research and development services during the relevant years. Moreover, testimony petitioners offered to substantiate the time Mr. Shami and Mr. McCall spent performing purported qualified services was inadequate. Petitioners offered the testimony of Mr. Shami, Mr. McCall and two FS employees, Jason Yates and Tai Pham. Several witnesses contradicted Mr. Shami's testimony, and no witnesses corroborated Mr. McCall's testimony. The testimony of the two FS employees was general, vague, conclusory and insufficient to establish the time Mr. Shami or Mr. McCall spent performing any specific service. In sum, we found all of their testimony self-serving and unreliable. We need not and do not accept any of their testimony. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). We hold that the inadequate substantiation prevents any amount of the relevant wages from qualifying for the research credit.

Petitioners argue that we must estimate the amount of wages allocable to qualified services if we find either Mr. Shami or Mr. McCall performed qualified services. We disagree. If a taxpayer establishes that he or she paid or incurred an expense but does not establish the amount of the expense, this Court may

approximate the amount of the expense, bearing heavily against the taxpayer whose inexactitude is of his or her own making. <u>Cohan v. Commissioner</u>, 39 F.2d 540, 543-544 (2d Cir. 1930). For the <u>Cohan</u> rule to apply, however, a reasonable basis must exist on which this Court can make an estimate. <u>Williams v. United States</u>, 245 F.2d 559, 560 (5th Cir. 1957); <u>Vanicek v. Commissioner</u>, 85 T.C. 731, 742-743 (1985). Without such a basis, any allowance would amount to unguided largesse. <u>Williams</u>, 245 F.2d at 560.

Petitioners failed to satisfy the Court that there is sufficient evidence to estimate the appropriate allocation of wages between qualified services and nonqualified services for Mr. Shami and Mr. McCall. The <u>Cohan</u> rule, therefore, does not allow this Court to make an estimate, and we decline to do so. <u>See, e.g.</u>, <u>Union Carbide Corp. & Subs. v. Commissioner</u>, T.C. Memo. 2009-50; <u>Eustace v. Commissioner</u>, T.C. Memo. 2001-66, <u>aff'd</u>, 312 F.3d 905 (7th Cir. 2002); <u>Fudim v. Commissioner</u>, T.C. Memo. 1994-235.

Petitioners rely on <u>United States v. McFerrin</u>, 570 F.3d 672 (5th Cir. 2009), in arguing that this Court <u>must</u> make an estimate. We follow a Court of Appeals decision squarely on point when appeal from our decision would lie to that court absent stipulation by the parties to the contrary. <u>Golsen v. Commissioner</u>, 54 T.C.

742 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971).  McFerrin is inapposite to the present case.

In McFerrin, the Commissioner argued that even if qualified research occurred, the taxpayer failed to provide adequate documentation to substantiate the costs associated with the research.  McFerrin, 570 F.3d at 679.  The Court of Appeals, applying the Cohan rule, held that if the taxpayer can show activities that were qualified research, then the court should estimate the expenses associated with those activities.  Id.[5]  The Court of Appeals for the Fifth Circuit did not overrule, or even address, the basic requirement under Cohan that a court must have a reasonable basis upon which to make an estimate.  See, e.g., Trinity Indus., Inc. v. United States, 691 F. Supp. 2d 688, 693 (N.D. Tex. 2010).  Moreover, the Court of Appeals for the Fifth Circuit upheld the requirement that a court must have a reasonable basis upon which to make an estimate in Williams.  Accordingly, the Court of Appeal's decision does not require this Court to estimate the amounts of

---

[5]We note that the U.S. District Court for the Southern District of Texas decision from which the taxpayer appealed in McFerrin denied the taxpayer the research credit because the taxpayer failed to adequately substantiate the claimed QREs.  See United States v. McFerrin, 102 A.F.T.R.2d 2008-6269 (S.D. Tex. 2008).  The District Court did not apply, however, the Cohan rule because the taxpayer failed to prove that it actually engaged in qualified research activities.  Id.  Accordingly, the District Court never determined whether it could make an estimate.  Id.

Mr. Shami's or Mr. McCall's wages that are allocable to qualified services given our finding that we lack a reasonable basis upon which to make such an estimate. We reject, therefore, petitioners' argument.

We have considered all arguments made in reaching our decision and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing and the parties' concessions,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.